# Exhibit 1

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 2 of 69 PageID #:12
Page 1 of 67

** FILED **  Env: 32527973
McHenry County, Illinois
2025MR000097
Date: 5/1/2025 2:01 PM
Katherine M. Keefe
Clerk of the Circuit Court

# IN THE CIRCUIT COURT OF THE 22nd JUDICIAL CIRCUIT
## MCHENRY COUNTY ILLINOIS

| | |
|---|---|
| IN RE CIVIL MATTER OF:<br>GREGORY J. HALPERN<br>Plaintiff,<br>vs.<br><br>CITADEL SECURITIES LLC; KNIGHT SECURITIES; VIRTU FINANCIAL; CANTOR FITZGERALD; CANACCORD GENUITY; CHARLES SCHWAB & CO.; E*TRADE SECURITIES LLC; JPMORGAN CHASE & CO; GOLDMAN SACHS GROUP INC.; MERRILL LYNCH; UBS ASSET MANAGEMENT, INC.; CREDIT SUISSE INC.; DEUTSCHE BANK SECURITIES; DTCC (DEPOSITORY TRUST & CLEARING CORPORATION); HARVEY VECHERY; HAROLD BLAISURE; MICHAEL TURNER; CONSTANCE NASH; DEVINE MAFA; ALFRED HILDEBRAND; INVESTOR HUB (IHUB); YAHOO; MARY SCHAPIRO; MARY JO WHITE; JAY CLAYTON; THE SECURITIES & EXCHANGE COMMISSION; AND DOES 1-100<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT FOR: DECLARATORY RELIEF, DAMAGES, AND DEMAND FOR A JURY TRIAL**

2025MR000097

COUNT I – FRAUD

COUNT II - SECURITIES FRAUD

COUNT III – CIVIL CONSPIRACY (Against All Defendants)

COUNT IV – BREACH OF FIDUCIARY DUTY

COUNT V – DEFAMATION & MARKET MANIPULATION (Against All Defendants)

COUNT VI – DECLARATORY RELIEF

COUNT VII –RACKETEERING INFLUENCED CORRUPT ORGANIZATION (RICO)

COUNT VIII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## COMPLAINT FOR DECLARATORY RELIEF, DAMAGES AND DEMAND FOR A JURY TRIAL

*(Filed under the Constitution of the United States, including Article I, Article II, the Fifth and Tenth Amendments, and the Illinois Constitution.)*

GREGORY J HALPERN, PRO SE
11008 MORNING DOVE LANE
SPRING GROVE, ILLINOIS 60081
EMAIL: greghalpern1@proton.me
PHONE: (847)565-9732
FAX: (815)604-8075

> **NOTICE**
> THIS CASE IS HEREBY SET FOR A SCHEDULING CONFERENCE IN COURTROOM _TBD_ ON
> ___07-31-2025___ , AT _9:00 a.m._
> FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

- 1 -

# TABLE OF CONTENTS

I.  **TABLE OF AUTHORITIES – P.3**

II. **INTRODUCTION – P.6**

III. **JURISDICTION & VENUE – P.9**

IV. **PARTIES – P.10**

V.  **FACTUAL ALLEGATIONS – P.17**

V. **CAUSES OF ACTION - P.23**

- **COUNT I – FRAUD P.23**

- **COUNT II – SECURITIES FRAUD P.28**

- **COUNT III – CIVIL CONSPIRACY (Against All Defendants) P.33**

- **COUNT IV – BREACH OF FIDUCIARY DUTY P.37**

- **COUNT V – DEFAMATION & MARKET MANIPULATION (Against All Defendants) P.41**

- **COUNT VI – DECLARATORY RELIEF P.46**

- **COUNT VII – RACKETEERING INFLUENCED CORRUPT ORGANIZATION (RICO) P.50**

- **COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – P.55**

IX. **CLAIMS FOR RELIEF – P.59**

X. **PRAYER FOR RELIEF – P.63**

XI. **DEMAND FOR JURY TRIAL – P.66**

XII. **EXHIBITS – 67**

# TABLE OF AUTHORITIES

1   ◆ United States Supreme Court Cases

2   • *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)

3       – Materiality and reliance in securities fraud (Rule 10b-5)

4   • *SEC v. Zandford*, 535 U.S. 813 (2002)

5       – Fraudulent conduct in connection with securities transactions

6   • *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)

7       – No First Amendment protection for defamatory falsehoods made with actual malice

8   • *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)

9       – Due process violation when judicial outcomes are tainted by external influence

10  • *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)

11      – Equal protection and unconstitutional discriminatory enforcement

12  • *Goldberg v. Kelly*, 397 U.S. 254 (1970)

13      – Due process in deprivations of property and reputation

14  • *Boyle v. United States*, 556 U.S. 938 (2009)

15      – Structure of a RICO association-in-fact enterprise

16  • *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989)

17      – Continuity and relatedness requirement in RICO pattern

18  • *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)

19      – Civil RICO: treble damages, standing, and pattern of racketeering

- 3 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 5 of 69 PageID #:16

20 ──────────────────────────────────────────

21 ◆ Federal Circuit Court Case

22 • *United States v. Yung*, 37 F.4th 70 (3d Cir. 2022)

23 — Online impersonation and deception are not protected by the First Amendment

24 ──────────────────────────────────────────

25 ◆ Illinois Case Law

26 • *Public Finance Corp. v. Davis*, 66 Ill. 2d 85 (1976)

27 — Elements of Intentional Infliction of Emotional Distress (IIED)

28 • *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102 (1999)

29 — Civil conspiracy elements under Illinois law

30 • *Steinmetz v. Kern*, 375 Ill. App. 3d 612 (1st Dist. 2007)

31 — Fiduciary duty standards and breach consequences

32 • *Patrick v. City of Chicago*, 2011 IL App (1st) 101388

33 — Aiding and abetting breach of fiduciary duty

34 ──────────────────────────────────────────

35 ◆ Statutes & Rules

36 • **18 U.S.C. §§ 1961–1964**

37 — Federal RICO Act (civil remedies, predicate acts, treble damages)

- 4 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 6 of 69 PageID #:17

Page 5 of 65

38     • **15 U.S.C. § 78j(b)**

39       – Securities Exchange Act of 1934 – Rule 10b-5 anti-fraud provision

40     • **815 ILCS 5/12**

41       – Illinois Securities Law (prohibited fraudulent acts)

42     • **720 ILCS 5/33G**

43       – Illinois RICO Act (criminal enterprise and pattern of activity)

44     • **735 ILCS 5/2-701**

45       – Declaratory Judgment Act – Illinois Code of Civil Procedure

46     • **17 C.F.R. § 240.10b-5**

47       – SEC Rule 10b-5 (fraud in connection with securities)

48     • **17 C.F.R. § 242.200 et seq.**

49       – Regulation SHO (naked short selling violations)

50     • **U.S. Constitution, Amendment VII**

51       – Right to jury trial in civil cases

52     • **Illinois Constitution, Art. I, § 13**

53       – Right to trial by jury

54     • **Illinois Supreme Court Rule 219**

55       – Sanctions and costs

56     • **Federal Rule of Civil Procedure 54(d)**

57       – Costs awarded to prevailing party

- 5 -

## I. INTRODUCTION

58    1.   This is not just a case — it is a **rescue operation for justice**, shareholder integrity,

59      and lawful corporate governance. Plaintiff **Gregory J. Halpern**, founder and Super

60      Majority Shareholder of **Max Sound Corporation (MAXD)**, brings this action in

61      McHenry County, Illinois, to expose and remedy a criminal conspiracy spanning Wall

62      Street brokerages, online message boards, fraudulent insiders, and complicit digital

63      platforms.

64    2.   At the center of this conspiracy is a **multi-tiered scheme** to **defraud MAXD**

65      **investors**, **seize control of Plaintiff's company, destroy American Small Business**,

66      and **manipulate public markets** using illegal tactics including naked short selling,

67      false online narratives, regulatory abuse, and insider fraud and betrayal.

68    3.   MAXD, once a promising micro-cap audio and biometric security technology

69      company, suffered a **deliberate takedown** despite its proprietary software library,

70      licensing partners, and verified intellectual property. Its founder, Plaintiff Halpern,

71      invested over **three million dollars of personal funds over several years**, only to be

72      met with betrayal by opportunists who later **weaponized the very platforms expected**

73      **to protect investors**.

74    4.   Over the course of this campaign, **Plaintiff was defamed, doxed, digitally stalked,**

75      **financially crippled, and illegally removed from corporate control** — all while

76      regulatory authorities stood down and **60,000+ defamatory posts were allowed to**

- 6 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 8 of 69 PageID #:19
Page 7 of 69

77    **circulate unchecked** on Yahoo Finance and InvestorHub (iHub), creating an online

78    feeding frenzy that crushed shareholder value.

79    These acts are not protected by the First Amendment, as the Supreme Court held in

80    *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), where it ruled that **knowingly false**

81    **speech made with actual malice is not constitutionally protected** and may form the

82    basis for civil liability.

83    5.   Defendants include **Harvey Vechery**, who fraudulently reasserted control of assets he

84         bought, sold, then unilaterally destroyed, while calculatedly violating SEC insider

85         disclosure laws and orchestrating a hostile takeover without cause. Co-defendants

86         include **Harold Blaisure**, a bankrupt executive with a history of financial fraud and

87         misconduct; **Devine Mafa**, a serial scammer linked to fraudulent employment and

88         stock deals; and **Alfred Hildebrand a.k.a. Bill Nichols**, a YouTube propagandist and

89         impersonator of legal counsel with a documented record of online market

90         manipulation.

91    Furthermore, in *United States v. Yung*, 37 F.4th 70 (3d Cir. 2022), the court clarified

92    that **false impersonation and online speech designed to deceive or harm others,**

93    **especially involving fabricated legal claims, fall outside First Amendment**

94    **protection and may constitute criminal conduct**, supporting the application of

95    RICO and IIED here.

- 7 -

96      6.  These bad actors, aided by institutional brokers including **Citadel**, **Virtu**, **Canaccord**,

97          and others, used **naked short selling to counterfeit MAXD shares**, manipulating the

98          market price down to **$0.000001**, erasing as much as **$120 million in actual**

99          **shareholder value according to peak market caps** thus devastating thousands of

100         innocent investors.

101     7.  Plaintiff now seeks relief for **fraud, securities fraud, civil conspiracy, breach of**

102         **fiduciary duty, defamation, intentional infliction of emotional distress, and RICO**

103         **violations**, along with **declaratory relief** and a **jury trial**. This complaint is supported

104         by direct evidence, sworn testimony, regulatory filings, recorded communications, and

105         whistleblower documentation.

106     8.  Plaintiff has never been accused of fraud or wrongdoing by any regulatory body in

107         over **four decades of entrepreneurial success** that created hundreds of millions of

108         dollars of *documented investor returns* and has successfully prosecuted **over 30 legal**

109         **actions** rooted in truth and law. The facts presented here demand redress not only for

110         Plaintiff, but for the public interest and every shareholder who trusted that American

111         markets still operate by rules — not by brute force, deception, and digital mob tactics.

112         The conduct described in this case mirrors patterns the courts have condemned,

113         including the **material misrepresentation and deception standard** articulated in

114         *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the **fraud-in-securities transactions**

115         **standard** affirmed in *SEC v. Zandford*, 535 U.S. 813 (2002)

- 8 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction-1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 10 of 69 PageID #:21

116    These facts, if proven at trial, would demonstrate violations not just of statutory and

117    tort law, but of core constitutional protections, including Plaintiff's **due process rights**

118    under *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), and equal protection

119    under *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), where courts warned against judicial

120    or governmental processes tainted by external manipulation, favoritism, or systemic

121    bias.

## II. JURISDICTION AND VENUE

122

123    9.  This Court has **subject matter jurisdiction** over this action pursuant to the Illinois

124    Constitution, Article VI, Section 9, and applicable provisions of the Illinois Code of

125    Civil Procedure, as this case involves civil claims for **fraud, tortious misconduct,**

126    **securities violations, and RICO predicate acts** committed in part within the State of

127    Illinois and affecting Illinois residents.

128    10. **Plaintiff Gregory J. Halpern** resides in **McHenry County, Illinois**, and has

129    sustained direct economic and reputational injury within this jurisdiction. Plaintiff was

130    domiciled in McHenry County during significant times relevant to this action and

131    continues to suffer ongoing harm there.

132    11. **Venue is proper in the Circuit Court of the 22nd Judicial Circuit, McHenry**

133    **County, Illinois**, pursuant to 735 ILCS 5/2-101, as several of the acts, omissions, and

134    consequences complained of herein occurred in McHenry County. This includes the

135    economic impact of the market manipulation, the defamation circulated to Illinois-

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 9 of 67

136    based shareholders, and Plaintiff's personal and business losses arising from

137    fraudulent conduct coordinated by Defendants.

138    12. This Court also has **personal jurisdiction over all named Defendants**, including

139    non-resident individuals and corporate entities, under 735 ILCS 5/2-209, because:

140         o  They **transacted business within Illinois**;

141         o  They **committed tortious acts causing injury within Illinois**;

142         o  They **conspired to interfere with Illinois residents and corporate assets**

143            **domiciled in Illinois**; and

144         o  Their unlawful activities were **intended to cause harm to Plaintiff in this**

145            **jurisdiction**, and in fact did so.

146    13. The damages at issue exceed the jurisdictional threshold for this Court. Plaintiff

147    expressly **demands trial by jury** in McHenry County, Illinois, and further asserts that

148    no federal question is raised which would divest this Court of jurisdiction or require

149    removal.

## III. PARTIES

151    14. **Plaintiff GREGORY J. HALPERN** is an individual residing in McHenry County,

152    Illinois, and is the founder, CEO, and **Super Majority Shareholder** of Max Sound

153    Corporation ("MAXD"), which was a fully reporting micro-cap audio technology

154    company until November 2022. Mr. Halpern has invested over **three million dollars**

- 10 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

155    **of his own capital** into the development of MAXD's patented audio and biometric

156    security technologies. He has never been accused of fraud or wrongdoing by any

157    regulatory authority in his 46 years of public company management or microcap

158    business dealings. In fact, Halpern is a pioneer in micro-cap capital formation and the

159    inventor of online crowdfunding, with decades of success in the Capital Markets

160    having testified before THE U.S. HOUSE OF REPRESENTATIVES on the S.E.C.'s

161    Role in Capital Formation, having influenced rule changes under Sarbanes-Oxley

162    Regulation and initial conception of The JOBS Act. For such efforts, Plaitiff has

163    received the National Small Public Company Leadership Award from the Small

164    Business Administration (SBA) for Outstanding Leadership, Service and Dedication to

165    America's Small Public Companies, with his ventures having increased by as much as

166    27,000%.

167  15. Since 2017, Halpern held controlling interest via preferred shares, properly acquired

168    and held under Delaware law and was the subject of a retaliatory and illegal hostile

169    takeover and intentional destruction orchestrated by the co-defendants. Plaintiff seeks

170    redress under common law, constitutional law, and established federal and Illinois

171    case law, including but not limited to:

172    ○  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) – establishing that there is no

173       First Amendment protection for knowingly false statements made with actual

174       malice.

- 11 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 13 of 69 PageID #:24
Page 12 of 69

175       o   *United States v. Yung*, 37 F.4th 70 (3d Cir. 2022) – confirming that false

176          impersonation and deceptive speech online are not constitutionally protected

177          and constitute criminal misconduct.

178       o   *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) – defining materiality and reliance

179          standards in securities fraud.

180       o   *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) – illustrating due

181          process violations when judicial processes are manipulated by external

182          influence.

183       o   *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) – stating the equal application of law

184          is a constitutional requirement.

185       o   *SEC v. Zandford*, 535 U.S. 813 (2002) – supporting liability for deceptive

186          practices in connection with the sale of securities.

187    16. **Defendants CITADEL SECURITIES LLC**, **KNIGHT SECURITIES**, **VIRTU**

188          **FINANCIAL**, **CANTOR FITZGERALD**, **CANACCORD GENUITY, CHARLES**

189          **SCHWAB & CO., E\*TRADESECURITIES LLC, JPMORGAN CHASE & CO.,**

190          **GOLDMAN SACHS GROUP INC., MERRILL LYNCH; UBS ASSET**

191          **MANAGEMENT, INC., CREDIT SUISSE INC. AND DEUTSCHE BANK**

192          **SECURITIES** are institutional market makers and broker-dealers who collectively

193          engaged in a pattern of **naked short selling and share counterfeiting** against MAXD

194          and similarly targeted microcap stocks.

- 12 -

17. **Defendant HARVEY VECHERY**, a self-styled investor with a documented history of vexatious litigation abuse, insider Securities violations, and deliberate manipulation of corporate control mechanisms, failing for five years to disclose a required 13D as a MAXD control person.

18. According to records from AT&T, Vechery called Plaintiff over **16,000 times** from 2016 to 2021 to harass and control Halpern and MAXD. In 2021, Vechery sold his full interest in the Formula 4 Protocol LLC (F4P) to Plaintiff but subsequently took the bizarre position that the transaction never occurred and launched a slander campaign aimed at regaining control of assets he no longer legally owned. For more than a year, Vechery engaged in outrageous terrorism of Halpern's daughter, including influencing Defendant Hildebrand to post death threats and knowingly false accusations of theft on Yahoo Finance in criminal violation of USA vs. Yung.

19. Vechery vexatiously filed several actions against Halpern alleging many defamatory lies that Vechery has documented he knew without question were false. Several of those cases were dismissed, defaulted, or non-suited. One that survived was Vechery getting the court to remove Plaintiff from MAXD for five years based on falsely alleging malfeasance and by pointing to the lies crafted by Vechery that were regurgitated ad nauseum on Yahoo, YouTube and IHUB chat boards for MAXD at the direct and indirect influence and conspiracy between Vechery and co-defendants Hildebrand, Blaisure, Turner, Nash, Mafa and others.

- 13 -

215  20. Vechery then made recorded calls where he and his sidekick Scott Kapp bragged that

216      "they had Halpern removed from MAXD." Then, however, Vechery never spent

217      another penny on the company even at Halpern's presentation of a significant revival

218      plan. In fact, Vechery shut the company and took an illegitimate multi-million-dollar

219      tax loss. Evidence includes **recorded calls, signed agreements, and a promissory**

220      **note Vechery altered dated March 30, 2022**.

221  21. **Defendant HAROLD BLAISURE** (a.k.a. John Blaisure, Harold J. Blaisure Jr.) is a

222      serial defendant litigant and bankrupt former executive, whose involvement with

223      MAXD and other ventures shows a repeated pattern of deceit and asset

224      misappropriation for decades and co-conspiratorially with defendant Vechery based on

225      their own significant digital communications compiled by Plaintiff from the period

226      between 2018 and 2022. Court records show federal litigation and bankruptcy filings

227      across multiple states, documenting a **long pattern of fraud, securities fraud, civil**

228      **disputes, and tax violations as well as 10b-5 violations under securities law for**

229      **fooling his way into an executive position at MAXD by using an alias and falsely**

230      **denying being a defendant in any pending securities fraud actions on his**

231      **Directors and Officers Questionnaire filed with the S.E.C.**

232  22. **Defendant DEVINE MAFA**, an international scam artist known for impersonation,

233      extortion forged employment claims, and multiple fraud schemes involving stock

234      manipulation. Leaked images and public reports connect him to deceptive financial

235      practices and collaboration with other co-defendants in undermining MAXD. Mafa

- 14 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 16 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 16 of 69 PageID #:27

236      filed a false employment claim against Plaintiff, despite **never having been an**

237      **employee** of MAXD, and was publicly outed through video and photographic

238      evidence as part of an international fraud ring.

239    23. **Defendant ALFRED HILDEBRAND a.k.a. BILL NICHOLS**, a YouTube-based

240      financial manipulator, serial impersonator, extortionist, and **non-lawyer**

241      **impersonating an attorney**, whose online posts and videos were used to smear

242      Plaintiff and interfere with investor confidence. He was directly tied to market

243      manipulation via **2,000+ posts on iHub, Yahoo Finance, and YouTube videos**,

244      falsely portraying Plaintiff as a "con artist CEO" while fraudulently promoting false

245      legal remedies. Hildebrand first stated he was a MAXD investor, then posts in direct

246      contradiction that he never bought or sold a single share. Aka Nichols posts and texts

247      that he will destroy Halpern and ***makes online death threats*** against family members.

248    24. **Defendants INVESTORSHUB (iHub)** and **Yahoo Finance** are complicit platforms

249      that hosted, and in many cases promoted, over **60,000 defamatory posts**, used by

250      short-selling conspirators and rogue insiders to discredit the company and artificially

251      depress MAXD's stock price, enabling unlawful short profits and helping cause the

252      ultimate destruction of MAXD.

253    25. Defendant **MICHAEL TURNER**, the President of Globex Transfer, MAXD's former

254      Transfer agent, Turner was on the chat boards under the alias J. GALT bashing

255      Plaintiff with thousands of defamatory posts that had no basis in any fact. These

256      highly negative posts were used to build up Defendant Vechery's destructive

- 15 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 17 of 69 PageID #:28
Page 18 of 89

257    defamation campaign. As the President of a securities transfer company, not only is

258    Turner action a major regulatory violation but it follows his long history of previously

259    being convicted and fined by FINRA for unlawful actions.

260    26. Defendant **CONSTANCE NASH**, who had sold her patented technology license for

261    Optimized Video Data Transmission to MAXD for a million dollars of cash and stock

262    up front with a 50% royalty agreement, then after Plaintiff brought her a proposed 55

263    million dollar offer from Google, she tried to extort the Company, ultimately saying

264    MAXD has no rights and that the signed agreement was void and a forgery. Vechery

265    claimed to intercede, but he helped Nash destroy the Google deal. Nash then resold the

266    same patent to another firm for another million dollars. Throughout this period, Nash

267    was on the chat boards full time for at least 5 years defaming Plaintiff without cause.

268    27. Defendant **MARY SCHAPIRO** former S.E.C. Commissioner during the periods in

269    question, was fully aware of the naked shorting problem but did nothing to stop it.

270    Rather, under the guise of investor protection, helped through fake enforcement

271    actions to destroy record numbers of small businesses.

272    28. Defendant **MARY JO WHITE**, former S.E.C. Commissioner during the periods in

273    question, was fully aware of the naked shorting problem but did nothing to stop it.

274    Rather, under the guise of investor protection, helped through fake enforcement

275    actions to destroy record numbers of small businesses.

276    29. Defendant **JAY CLAYTON**, former S.E.C. Commissioner during the periods in

277    question, was fully aware of the naked shorting problem but did nothing to stop it.

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 16 of 67

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 18 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 18 of 69 PageID #:29

278    Rather, under the guise of investor protection, helped through fake enforcement

279    actions to destroy record numbers of small businesses. In fact, under Clayton's

280    leadership, Plaintiff's Auditor was enforced for committing no crime except growing

281    too much as a microcap audit firm. Plaintiff, was the character witness against the

282    S.E.C. after receiving a recording left by Clayton's enforcement department, that

283    quoted S.E.C. attorney's saying, they "hope" the bosses aren't smokin' crack."

284    30. Defendant **SECURITIES & EXCHANGE COMMISSION (SEC)** is a federal

285    agency tasked with enforcing U.S. securities laws. Despite receiving documented

286    whistleblower complaints, FOIA-backed proof, and formal requests for intervention

287    from Plaintiff, the SEC failed to act, enabling continued racketeering and investor

288    harm and ignoring the primary stated purpose of their entire existence which is to

289    "Protect Investors."

290    31. DOES 1–100 are individuals and entities not yet identified but who will be added to

291    this Complaint upon discovery. These individuals participated in the fraudulent

292    enterprise, including traders, brokers, legal facilitators, shell entities, digital smear

293    agents, corporate raiders, and platform administrators.

294    # IV. FACTUAL ALLEGATIONS

295    32. **This case arises from a coordinated, premeditated, and fraudulent campaign** by

296    the named Defendants to unlawfully seize control of MAXD (Max Sound

- 17 -

297   Corporation), destroy its market value, and financially and reputationally cripple its

298   founder, CEO, and Super Majority Shareholder, Plaintiff Gregory J. Halpern.

299   33. Over the last decade, Plaintiff developed MAXD's core intellectual property,

300   including patented audio enhancement and biometric security technologies, investing

301   over **Three Million Dollars of personal capital** and devoting over 10 years to

302   transforming MAXD into a publicly traded, fully reporting microcap company.

303   34. Starting in or around 2021, a coalition of bad actors, led by Defendant **Harvey**

304   **Vechery**, engaged in a multi-pronged takedown strategy involving:

305   o   **Corporate hijacking** of Plaintiff's control shares and his leadership at MAXD;

306   o   **Online defamation warfare**;

307   o   **Regulatory misrepresentation**;

308   o   **Naked short selling** and **share counterfeiting** through platforms operated by

309   Citadel, Virtu, Knight, Canaccord, and others.

310   35. Defendant Vechery **knowingly violated insider disclosure rules**, failing to file a

311   required Schedule 13D to report his greater than 5% ownership in MAXD for nearly

312   **five years**, only filing after being publicly exposed. He was advised repeatedly by

313   Plaintiff and Securities Counsel of this obligation and ignored it until attempting to

314   seize control of the company during Plaintiff's personal bankruptcy caused primarily

315   by the chicanery of Vechery and his minions. This is a decades old pattern by this

316   defendant as proven by the public record. The concealment of insider status and

317   delayed Schedule 13D filing violates the duty to disclose material information

- 18 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 20 of 69 PageID #:31
Page 19 of 69

318    required under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), which established that

319    omissions of material fact in connection with securities can constitute fraud when they

320    alter the "total mix" of information available to investors.

321  36. Whereas in the case of RUNFLATAMERICA, LLC, Plaintiff and Appellant, v.

322    MICHAEL MALKASIAN, et al., Defendants and Respondents. Dockets: B248002 &

323    B252766 COURT OF APPEAL OF THE STATE OF CALIFORNIA SECOND

324    APPELLATE DISTRICT DIVISION FOUR - April 3, 2015:

325  37. The first amended complaint alleged that Vechery "participated in the management of

326    RAC and served in an executive capacity." He was alleged to have engineered the

327    appointment of Malkasian/ and Taylor to RAC's board of directors, the removal of

328    Cole from all positions at RAC, and the transfer of RAC's assets to one of Vechery's

329    companies to satisfy an allegedly unenforceable promissory note. Both Cole and

330    appellant asserted claims for breach of fiduciary duty, and Cole alone asserted a claim

331    for wrongful termination. There were allegations that Vechery "exercised full control

332    over all the board members of RAC in the latter half of 2010, including Malkasian and

333    Taylor, as well as Don Mazzoni, Mitchell Lederer, and Don Mills," all of whom acted

334    at Vechery's "express instruction" in terminating Cole; and that Vechery had a

335    fiduciary duty to appellant because of his "management position a position of full

336    control over [RAC's board] by virtue of his strong business persuasion in the Los

337    Angeles community. Appellant referenced "the November 19, 2010, Board minutes"

338    as supporting the claim that the board "transferred all of the assets of RAC to

- 19 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction-1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 21 of 69 PageID #:32
Page 20 of 69

339    Vechery's company under the guise of satisfying an alleged $100,000 promissory note

340    between RAC and the company that had a maturity date of February 9, 2005 (i.e., well

341    over five years prior to the actual asset transfer). However, as of the date of transfer,

342    the promissory note had already been satisfied and/or the legal ability of Vechery's

343    company to collect on the note had long passed."

344   38. The conduct described mirrors the concerns in *Caperton v. A.T. Massey Coal Co.*, 556

345    U.S. 868 (2009), where the Supreme Court recognized that judicial outcomes tainted

346    by external influence or concealed relationships can constitute a due process violation.

347    Vechery's repeated use of judicial process to seize assets and corporate control

348    without full disclosure undermines the integrity of the proceedings and violates

349    Plaintiff's right to a fair hearing.

350   39. Despite **publicly affirming the complete sale of his interest in Formula 4 Protocol**

351    **LLC** to Plaintiff in 2021 — as reaffirmed in a **March 30, 2022, promissory note**

352    altered by Defendant — Vechery began spreading false claims and **funded a massive**

353    **defamation campaign** to reverse the transaction and smear Plaintiff's reputation.

354   40. Co-conspirators **Harold Blaisure**, **Devine Mafa, Constance Nash, Michael Turner**

355    and **Alfred Hildebrand a.k.a. Bill Nichols** were deployed to assist in this campaign,

356    each with a documented background of **fraud, impersonation, bankruptcy, and**

357    **litigation abuse**.

358   41. **Yahoo Finance and iHub** were weaponized with over **60,000 defamatory and**

359    **manipulative posts**, creating a hostile environment for retail investors. These posts

- 20 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction-1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 22 of 69 PageID #:33
Page 2 of 69

were **strategically timed to suppress MAXD's market price**, causing a catastrophic

collapse of public confidence and trade volume.

42. *Evidence:* The Yahoo Finance board documents **23.6K comments**, while iHub's

MAXD board exceeds **39K posts**, many of which can be tied directly to aliases

connected to the defendants.

43. On multiple occasions, **false rumors were spread early and often** that Plaintiff had

been removed from his leadership role, evicted from his home, and "embezzled" funds

— none of which are true. These statements were used to justify the hostile seizure of

MAXD assets and sow distrust among stakeholders.

44. Such knowingly false and reputationally damaging statements are not protected under

the First Amendment. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Court

held that defamatory falsehoods made with actual malice are actionable when directed

at private individuals or public figures — particularly where reputational harm is

intentional and repeated.

45. Meanwhile, **naked short selling continued unchecked**, facilitated by broker-dealer

defendants using platforms such as E*TRADE, Schwab, Canaccord, etc. As a result,

MAXD's share price was **driven down to sub-penny levels**, eventually falling to

**$0.000001**, with recent market caps reflecting a **99.99%+ artificial devaluation**.

46. Despite the attack, Plaintiff remained in compliance with all reporting requirements

until **temporarily designating MAXD as non-reporting** in late 2022 due to

- 21 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction-1024793
Page 223 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 23 of 69 PageID #:34

380      harassment, legal attacks, and platform manipulation. Even this legal pause was falsely

381      spun as abandonment or fraud by online attackers.

382    47. In 2023, Vechery obtained a **default judgment in California** by deception,

383      misrepresentation, and concealment of key facts — including the true ownership of

384      preferred shares, SEC filings, and business operations. Plaintiff was not afforded the

385      opportunity to properly contest or respond due to improper notice and ongoing

386      harassment.

387    48. This judicial abuse is consistent with the due process failures condemned in *Goldberg*

388      *v. Kelly*, 397 U.S. 254 (1970), and *Caperton*, where courts warned that decisions based

389      on misrepresented facts, denied notice, or unfair bias violate constitutional protections

390      — especially where career reputation and property rights are at stake.

391      The collective goal of the defendants was to:

392      o  **Crush MAXD's share price** to acquire control for pennies;

393      o  **Silence its founder and majority shareholder** through litigation and defamation;

394      o  **Seize corporate assets**, including trade secrets and IP;

395      o  **Escape regulatory liability** by concealing insider actions under aliases and bad-

396      faith filings.

397    49. As a direct result of this concerted criminal conspiracy, Plaintiff has suffered:

398      o  Destruction of his life's work

399      o  Collapse of personal financial standing

- 22 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 24 of 69 PageID #:35
Page 23 of 69

| | | |
|---|---|---|
| 400 | ○ | Devastating emotional and reputational harm |
| 401 | ○ | A reduction of shareholder value exceeding **$100 million** across thousands of retail |
| 402 | | investors. |

403  50. The conduct of Defendants rises to the level of **securities fraud, RICO violations,**

404  **defamation, tortious interference, and intentional infliction of emotional distress**,

405  necessitating both compensatory and punitive damages, as well as declaratory relief

406  and jury adjudication.

407  51. These coordinated acts, including online harassment, impersonation, and identity

408  manipulation, fall squarely within the scope of *United States v. Yung*, 37 F.4th 70 (3d

409  Cir. 2022), which held that impersonation of legal officials and dissemination of false

410  claims for the purpose of retaliation or coercion are not protected speech and may

411  constitute criminal misconduct under federal law.

412  52. Plaintiff's allegations, supported by documentary and audio evidence, establish a

413  continuous and multi-actor enterprise acting outside the bounds of protected speech,

414  fair competition, or due process. These facts, taken as true, are sufficient under

415  *Zandford* and *Basic* to support securities and RICO fraud claims at the pleading stage.

416  # V. CAUSES OF ACTION

417  ## COUNT I – FRAUD (Against All Defendants)

- 23 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

418   53. Plaintiff realleges and incorporates by reference all preceding paragraphs of this

419        Complaint as though fully set forth herein.

420   54. Beginning no later than 2021, and continuing to the present, Defendants — including

421        but not limited to **Harvey Vechery, Harold Blaisure, Devine Mafa, Michael**

422        **Turner, Constance Nash, Alfred Hildebrand a.k.a. Bill Nichols, Citadel Securities**

423        **llc, Knight Securities**, **Virtu Financial**, **Cantor Fitzgerald**, **Canaccord Genuity,**

424        **Charles Schwab & Co., E*Tradesecurities llc, JP Morgan Chase & Co., Goldman**

425        **Sachs Group Inc., Merrill Lynch; UBS Asset Management, Inc., Credit Suisse**

426        **Inc. and Deutsche Bank Securities and Yahoo Finance/iHub** — knowingly and

427        willfully engaged in a multi-pronged scheme to defraud Plaintiff and MAXD

428        shareholders by making **false representations**, **withholding material facts**, and

429        **executing coordinated digital and financial deception**.

430   55. The elements of fraud under Illinois law — a false statement of material fact,

431        knowledge of its falsity, intent to induce reliance, actual reliance, and damages — are

432        fully met here. As established by the Supreme Court in *Basic Inc. v. Levinson*, 485

433        U.S. 224 (1988), **material omissions and misrepresentations in a securities context**

434        **are actionable when they affect the total mix of information available to**

435        **investors**. This applies to both statements and deliberate omissions made by

436        Defendants in SEC filings, public forums, and legal pleadings.

437   56. **Defendant Harvey Vechery**:

- 24 -

438       o  Knowingly misrepresented his ownership status and regulatory compliance in

439          MAXD by **failing to file a required Schedule 13D for over five years**, thus

440          fraudulently concealing his status as a greater-than-5% shareholder.

441       o  Knowingly executed a **sale of his entire Formula 4 Protocol (F4P) investment to**

442          **Plaintiff in 2021**, then reversed course and **denied the transaction ever occurred**

443          despite signed agreements, a recorded confirmation call, and a March 30, 2022

444          **Vechery altered promissory note reaffirming the deal**. Vechery then filed a

445          vexatious and false action, that he non-suited the week of trial, while having his co-

446          conspirators endlessly bash Plaintiff on-line perpetuation of those same defamatory

447          lies.

448       o  Directed and funded **false defamatory statements** on social media and stock

449          forums to depress MAXD's share price and damage Plaintiff's reputation in

450          anticipation of seizing control.

451    57. **Defendant Devine Mafa**:

452       o  Fraudulently claimed employment at MAXD and **filed or threatened to file a**

453          **bogus wage dispute**, despite never being an employee or receiving any legitimate

454          offer letter signed by Plaintiff.

455       o  Promoted MAXD for personal gain while simultaneously working to undermine

456          Plaintiff's authority with the assistance of Defendant Vechery.

- 25 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

457    58. **Defendant Harold Blaisure**, a known bankrupt and disgraced former executive,

458         fraudulently misrepresented his role and influence within MAXD after being

459         **terminated for cause**. Blaisure was engaged in aiding the hostile takeover and made

460         **false public representations** to investors and potential stakeholders.

461    59. **Defendant Alfred Hildebrand a.k.a. Bill Nichols**, using multiple fake identities,

462         fraudulently posed as a licensed attorney, produced false legal commentary,

463         **encouraged shareholders to join a baseless derivative lawsuit**, and falsely claimed

464         Plaintiff had been removed from MAXD leadership. These statements were made **with**

465         **knowledge of their falsity** and **intent to deceive and harm**.

466    60. These actions constitute knowing misrepresentation and public deception, and go

467         beyond civil fraud — they rise to criminal impersonation. As held in *United States v.*

468         *Yung*, 37 F.4th 70 (3d Cir. 2022), **false impersonation of legal professionals and the**

469         **dissemination of fabricated legal narratives designed to deceive and intimidate**

470         **the public are not protected speech and constitute prosecutable fraud.**

471    61. **Defendants Yahoo and iHub** facilitated the fraud by:

472         o  Allowing and promoting over **60,000 defamatory and manipulative posts**, many

473             of which originated from known aliases tied to the other Defendants.

474         o  Willfully ignoring their own community guidelines and securities fraud reporting

475             obligations, thereby **becoming active participants in market manipulation and**

476             **reputational defamation**.

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 26 of 67

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction-1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 28 of 69 PageID #:39
Page 27 of 69

477   62. **Broker-Dealer Defendants** including Citadel Securities llc**,** Knight Securities**,** Virtu

478        Financial**,** Cantor Fitzgerald**,** Canacord Genuity, Charles Schwab & Co.,

479        E*Tradesecurities llc, JP Morgan Chase & Co., Goldman Sachs Group Inc., Merrill

480        Lynch; UBS Asset Management, Inc., Credit Suisse Inc. And Deutsche Bank

481        Securities**:**

482        o   Engaged in **counterfeit share creation and naked short selling**, designed to flood

483             the market with unbacked MAXD shares, collapse the share price, and profit from

484             the artificially created decline.

485        o   This conduct was done with **knowledge of Plaintiff's controlling shareholder**

486             **position** and thus constituted a coordinated effort to devalue his equity and

487             facilitate unlawful seizure.

488   63. Each of the misrepresentations, omissions, and actions was made **intentionally**,

489        **knowingly**, and with **malicious purpose** to induce reliance by investors, regulators,

490        business partners, and Plaintiff himself — all of whom **reasonably relied** on the belief

491        that the Defendants were acting in lawful, fiduciary, or regulated capacities.

492   64. In *SEC v. Zandford*, 535 U.S. 813 (2002), the Court reaffirmed that **fraud "in**

493        **connection with the sale of securities" includes schemes where investors are**

494        **misled through ongoing manipulation or omission**, and that such misconduct

495        supports liability even without face-to-face transactions. The Defendants' multi-

496        layered campaign of deception through public statements, omitted filings, and

497        impersonated authority fits squarely within this doctrine.

- 27 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 29 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 29 of 69 PageID #:40

498       o  As a direct and proximate result of this systemic and orchestrated fraud, Plaintiff

499         and thousands of MAXD shareholders have sustained damages in excess of **$120**

500         **million**, including: Destruction of stock value;

501       o  Loss of corporate control;

502       o  Reputational devastation;

503       o  Personal and corporate financial losses;

504       o  Compromised investor relations and business opportunities.

505    65. Plaintiff is entitled to **compensatory damages**, **punitive damages**, and **any equitable**

506       **relief the Court deems just**, including declaratory relief confirming Plaintiff's legal

507       ownership of MAXD control shares, reversal of fraudulent corporate filings, and

508       restitution for damages suffered.

509    66. The fraud alleged here — involving deliberate market devaluation, digital

510       impersonation, regulatory deceit, and false court pleadings — satisfies both **state**

511       **common law** and **federal antifraud standards**, including those under Rule 10b-5 and

512       interpreted in *Basic* and *Zandford*. These acts were not mere negligence but deliberate,

513       sustained, and targeted attacks on MAXD and its shareholders.

## COUNT II – SECURITIES FRAUD (Violation of Section 10(b) of the Exchange Act and Rule 10b-5) (Against All Defendants)

516    67. Plaintiff realleges and incorporates by reference all preceding paragraphs of this

517       Complaint as though fully set forth herein.

- 28 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 30 of 69 PageID #:41
Page 28 of 68

68. Defendants, individually and in concert, violated both **Illinois securities laws (815 ILCS 5/12)** and applicable provisions of the **Securities Exchange Act of 1934**, including but not limited to **Section 10(b)** and **Rule 10b-5**, by engaging in a widespread campaign of material misrepresentations, omissions, and deceptive practices designed to **artificially deflate the market value of MAXD stock**, seize control of the Company, and profit at the expense of Plaintiff and thousands of shareholders. Defendants engaged in acts that:

- o **Distorted MAXD's market profile** through coordinated online defamation;
- o **Falsely misrepresented control and ownership** of shares in SEC filings and public statements;
- o **Engaged in counterfeit securities issuance** via naked short selling;
- o **Concealed insider transactions and interests** in violation of Schedule 13D and other disclosure requirements.

69. The core elements of securities fraud — material misstatement or omission, scienter (intent), a connection with the purchase or sale of a security, reliance, economic loss, and loss causation — are present here. As established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), **even omissions are actionable when they significantly alter the total mix of information available to investors**, and reliance on an efficient market is presumed under the fraud-on-the-market theory.

70. **Defendant Harvey Vechery**:

- 29 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 31 of 69 PageID #:42
Page 30 of 69

538      o   Willfully withheld material disclosures for over **five years** by failing to file a Schedule

539           13D as required by federal law once he acquired control-level ownership of MAXD

540           common stock.

541      o   Later filed a backdated and misleading Schedule 13D in 2022, attempting to sanitize

542           his position only after attempting a hostile takeover of Plaintiff's company during

543           Plaintiff's personal bankruptcy proceedings.

544   71. **Defendants, Devine Mafa, Constance Nash, Michael Turner, Harold Blaisure,** and

545        **Alfred Hildebrand a.k.a. Bill Nichols**:

546      o   Acted as **unlicensed promoters and de facto securities dealers**, making

547           unsubstantiated claims about MAXD's business, financials, and leadership on public

548           forums, social media, and YouTube broadcasts, thereby distorting investor perception.

549      o   Mafa falsely claimed to be an executive of MAXD and attempted to file a wage-based

550           claim to validate that fraud, while simultaneously encouraging stock dilution schemes

551           to damage market value.

552      o   As an admitted non-shareholder Hildebrand falsely claimed to represent shareholders

553           in a "derivative lawsuit," despite lacking standing, legal training, or any filing

554           authority, all while soliciting new investor action against Plaintiff under false

555           pretenses.

556   72. **Brokerage and Market Maker Defendants**, including but not limited to **Citadel**

557        **Securities llc**, **Knight Securities**, **Virtu Financial**, **Cantor Fitzgerald**, **Canaccord**

- 30 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 32 of 69 PageID #:43

| 558 | **Genuity, Charles Schwab & Co., E\*Trade Securities llc, JP Morgan Chase & Co.,** |
| 559 | **Goldman Sachs Group Inc., Merrill Lynch; UBS Asset Management, Inc., Credit** |
| 560 | **Suisse Inc. and Deutsche Bank Securities** engaged in: |

561  o  **Naked short selling**, flooding the market with non-existent MAXD shares to

562     **manipulate the market price downward**, destroy liquidity, and enable "buy-ins" at

563     artificially depressed levels.

564  o  These acts constitute fraudulent manipulation of a security under both state and federal

565     law and directly violated their regulatory obligations under **Reg SHO** and related anti-

566     fraud provisions.

567  73. **Yahoo Finance and iHub**, while not traditional issuers or brokers, played a critical

568     role by:

569     All false statements and omissions made by the Defendants were:

570  o  **Material**, as they altered the total mix of information available to reasonable investors

571     regarding MAXD's performance, leadership, value, and legitimacy;

572  o  Made with **scienter**, as Defendants knew or were reckless in not knowing that the

573     statements were false or misleading;

574  o  **In connection with the purchase or sale of securities**, specifically MAXD common

575     stock traded publicly on the OTCPK market.

576  o  As reaffirmed by the Supreme Court in *SEC v. Zandford*, 535 U.S. 813 (2002),

577     **fraudulent conduct need not occur during a specific securities transaction but**

- 31 -

578      **includes broader deceptive schemes designed to mislead investors and manipulate**

579      **market prices**. The coordinated falsehoods and market sabotage described here

580      directly fall under this expanded interpretation of securities fraud liability.

581   74. Defendants MARY SCHAPIRO, MARY JO WHITE, and JAY CLAYTON, former

582      Chairs of the U.S. Securities and Exchange Commission (SEC), and the SEC itself,

583      failed in their regulatory duties by knowingly ignoring systemic fraud, naked short

584      selling, and coordinated market manipulation against MAXD. Their deliberate

585      inaction, despite receiving formal whistleblower complaints, FOIA-backed proof, and

586      direct outreach from Plaintiff, constitutes a **material omission and regulatory abuse**

587      in violation of the anti-fraud provisions of the Securities Exchange Act of 1934, and

588      directly contributed to the collapse of MAXD's share price and investor confidence.

589   75. As a direct and proximate result of Defendants' securities fraud, Plaintiff and the

590      Company suffered:

591      o   Over **$120 million in market capitalization losses**;

592      o   Collapse of investor confidence and inability to raise capital;

593      o   Dilution of Plaintiff's controlling stake and destruction of corporate momentum;

594      o   Permanent reputational harm to both the Company and its founder.

595   76. Plaintiff is entitled to **monetary damages**, **equitable relief**, and all other remedies

596      available under Illinois and federal securities law, including but not limited to

597      rescission, injunction, restitution, treble damages (where applicable), and referral for

- 32 -

598      criminal investigation. Furthermore, the naked short selling practices described, by

599      flooding the market with non-existent MAXD shares and creating phantom supply,

600      violated not only anti-fraud provisions but also regulatory obligations under

601      **Regulation SHO**, which requires delivery of shares to settle trades and bars

602      manipulative failures to deliver. Such market abuse directly supports liability under

603      the Exchange Act and Rule 10b-5.

604      77. Defendants' acts, individually and collectively, constitute egregious violations of the

605      antifraud provisions of the Exchange Act and Rule 10b-5, as defined in *Basic* and

606      *Zandford*, and compounded by their systemic evasion of Regulation SHO settlement

607      obligations. Plaintiff and MAXD's shareholders have suffered direct, measurable, and

608      devastating harm as a result.

609     **COUNT III – CIVIL CONSPIRACY** (Against All Defendants)

610      78. Plaintiff realleges and incorporates by reference all preceding paragraphs of this

611      Complaint as though fully set forth herein.

612      79. This action arises from an **intentional and unlawful agreement among the**

613      **Defendants** to commit a series of wrongful acts against Plaintiff and MAXD —

614      including, but not limited to: **fraud, securities violations, defamation, market**

615      **manipulation, tortious interference**, and the unlawful seizure of corporate control.

616      Under Illinois law, a civil conspiracy arises when two or more parties agree to

- 33 -

617    accomplish, by concerted action, either an unlawful purpose or a lawful purpose by

618    unlawful means.

619    80. The Illinois Supreme Court recognizes that **when parties act in concert to commit**

620    **an underlying tort — such as fraud, defamation, or market manipulation — each**

621    **conspirator is jointly and severally liable for all resulting damages**. (*See McClure*

622    *v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102 (1999)).

623    81. Defendants knowingly formed and participated in a **common plan and mutual**

624    **scheme** to:

625    o  Discredit and remove Plaintiff from his rightful role as CEO and Super Majority

626       Shareholder of MAXD;

627    o  Artificially suppress the value of MAXD shares to fractional pennies through

628       defamation, naked short selling, and misinformation;

629    o  Illegally acquire corporate control, destroy intellectual property, and business

630       opportunities belonging to MAXD and Plaintiff;

631    o  Mislead investors, regulators, and courts with coordinated misrepresentations, false

632       documents, and retaliatory legal actions.

633    82. The conspiracy involved multiple **overt and covert acts**, including:

634    o  **False filings** with the SEC and courts by Defendant Harvey Vechery to conceal

635       insider status, misrepresent asset transfers, and unlawfully assert control;

- 34 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 36 of 69 PageID #:47

Page 35 of 69

636    o **Fabricated wage and employment claims** by Devine Mafa to discredit Plaintiff

637        and create false legal standing;

638    o **Defamatory videos, social media campaigns, and impersonation of legal**

639        **authority** by Alfred Hildebrand a.k.a. Bill Nichols to create the false appearance of

640        regulatory and shareholder revolt;

641    o **Tens of thousands of coordinated negative posts** on Yahoo Finance and

642        InvestorHub, used to systematically discredit MAXD and suppress investor interest;

643    o **Unlawful trading practices and price suppression** by broker-dealer Defendants

644        through naked short selling and synthetic share issuance, designed to benefit from

645        MAXD's destruction.

646   83. The conspiratorial coordination of online defamation, market sabotage, and insider

647       collusion mirrors the abuse of process described in *Caperton v. A.T. Massey Coal Co.*,

648       556 U.S. 868 (2009), where the Court warned that **judicial outcomes orchestrated by**

649       **insiders or external parties with undisclosed interests violate due process** and

650       threaten the fairness of all proceedings.

651   84. Each Defendant knew of and substantially assisted or encouraged the objectives and

652       conduct of the conspiracy, and each acted with **the intent to further the unlawful**

653       **enterprise**.

654   85. The conspiracy caused direct and measurable harm to Plaintiff and the Company,

655       including:

656    o   Catastrophic devaluation of corporate stock and market cap;

- 35 -

657     o   Destruction of Plaintiff's business reputation and professional relationships;

658     o   Loss of Plaintiff's effective control and ability to raise capital or enter partnerships;

659     o   Severe emotional, reputational, and economic damages.

660   86. This pattern of coordinated action also aligns with the reasoning in *Yick Wo v.*

661     *Hopkins*, 118 U.S. 356 (1886), which condemned **the unequal application of legal**

662     **processes to target individuals for selective harm**. Defendants' actions were not

663     isolated — they were **strategically synchronized to overwhelm, isolate, and**

664     **neutralize Plaintiff through judicial, financial, and reputational ambush tactics**.

665   87. Defendants' conduct constitutes **civil conspiracy under Illinois common law**, and

666     each is jointly and severally liable for the full extent of damages flowing from the

667     wrongful acts committed in furtherance of the conspiracy.

668   88. Plaintiff seeks:

669     o   **Compensatory damages** in excess of $120 million;

670     o   **Punitive damages** based on the willful, malicious, and premeditated nature of

671     Defendants' conduct;

672     o   **Equitable relief** including the reinstatement of Plaintiff's recognized control rights

673     and reversal of all false or manipulated filings and corporate actions;

674     o   **Costs of suit and attorneys' fees**, to the extent allowed under law.

675   89. Defendants' conduct — a unified strategy of falsehoods, intimidation, and judicial

676     fraud — constitutes a textbook civil conspiracy under Illinois law and raises grave

- 36 -

677   constitutional concerns under *Caperton* and *Yick Wo* regarding the manipulation of

678   judicial and public systems to inflict targeted harm.

679   **COUNT IV – BREACH OF FIDUCIARY DUTY** (Against

680   Defendants Harvey Vechery, Harold Blaisure, Devine Mafa,

681   Constance Nash and Michael Turner)

682   90. Plaintiff realleges and incorporates by reference all preceding paragraphs of this

683   Complaint as though fully set forth herein.

684   91. At various times relevant to this action, Defendants **Harvey Vechery, Harold**

685   **Blaisure, Devine Mafa**, **Constance Nash,** and **Michael Turner** held positions of

686   influence, control, or fiduciary obligation to MAXD and its shareholders, either as

687   officers, insiders, executive collaborators, or financial backers with operational input

688   and insider access.

689   92. As such, these Defendants owed MAXD, its shareholders, and its founder a **fiduciary**

690   **duty of care, loyalty, honesty, and good faith**, which included:

691   o   Acting in the best interest of the Company and its investors;

692   o   Avoiding self-dealing or secret transactions;

693   o   Disclosing all material conflicts of interest;

694   o   Refraining from interference or conduct designed to harm the Company's market

695   standing, governance structure, or IP integrity.

- 37 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

696    93. Under Illinois law, corporate officers and directors owe fiduciary duties of **loyalty,**

697        **care, honesty, and full disclosure** to the corporation and its shareholders. This duty

698        prohibits self-dealing, concealment of conflicts, or actions designed to harm the

699        corporation for personal gain. (*See Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557

700        (1984); applied in Illinois cases such as *Steinmetz v. Kern*, 375 Ill. App. 3d 612 (1st

701        Dist. 2007)). Where such duties are breached, liability attaches regardless of whether

702        the actor was a formal officer — **de facto control is enough.**

703    94. **Defendant Harvey Vechery**:

704        o  Violated his fiduciary duty by **failing to disclose material ownership interests** in

705           a timely fashion, **withholding mandatory SEC filings,** and then attempting to

706           fraudulently seize corporate control through legal manipulation during Plaintiff's

707           personal bankruptcy.

708        o  Used insider knowledge and influence to **orchestrate a smear campaign**, encourage

709           regulatory violations, and **intentionally sabotage business development** to weaken

710           the Company and force a devaluation for illegal personal tax deduction benefits.

711        o  **Reaffirmed his sale of ownership** in Formula 4 Protocol to Plaintiff, then later

712           denied the transaction and undermined F4P operations through threats and

713           defamatory claims.

714    95. This conduct is particularly egregious because it not only breached fiduciary

715        obligations, but also **triggered due process violations and potential judicial fraud,**

716        as described in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), where the

- 38 -

717          Court warned that fiduciaries acting under color of corporate authority while

718          simultaneously corrupting court processes **undermine fundamental fairness and**

719          **lawful governance.**

720     96. **Defendant Harold Blaisure**, a former executive, breached his fiduciary duties by:

721          o Retaining and using corporate property and IP after his removal from the Company;

722          o Misrepresenting his role and making unauthorized representations to partners and

723            the public;

724          o Collaborating with Vechery and others in **defamatory public campaigns** against

725            Plaintiff and the Company.

726     97. **Defendant Devine Mafa** violated his obligations by:

727          o Falsely presenting himself as an officer of MAXD without authorization;

728          o Promoting himself in association with MAXD to raise his personal profile;

729          o Filing or threatening **fraudulent legal claims, including baseless extortions** to

730            create artificial leverage against Plaintiff;

731          o Spreading false statements about ownership and licensing agreements to investors

732            and stakeholders.

733     98. Even non-officer collaborators may be found liable for aiding and abetting breach of

734          fiduciary duty where their actions intentionally support or enable insiders in violating

735          their obligations. (*See Patrick v. City of Chicago*, 2011 IL App (1st) 101388). **Aiding**

- 39 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 40 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 41 of 69 PageID #:52

736     **a fiduciary's scheme to defraud, extort, or destabilize a corporation imposes**

737     **liability on all participants**, regardless of their formal corporate title.

738   99. **Defendant Michael Turner**, acting in coordination with the other bad actors,

739     improperly exercised insider authority to:

740       o  Interfere with Company operations;

741       o  Collaborate on misinformation campaigns;

742       o  Promote his own interests and the interests of co-conspirators while disregarding his

743         duty to MAXD and its stakeholders.

744   100.     The collective misconduct of these Defendants was **willful, malicious, and**

745     **calculated**, aimed at **seizing control**, undermining Plaintiff's lawful authority, and

746     causing the collapse of MAXD's share value to facilitate insider enrichment and

747     retaliation.

748   101.     As a direct and proximate result of Defendants' breaches of fiduciary duty,

749     Plaintiff and MAXD have suffered:

750       o  Corporate value destruction exceeding $120 million;

751       o  Disruption of key partnerships and business deals;

752       o  Loss of shareholder confidence and market access;

753       o  Severe reputational damage and personal harm.

754   102.     Plaintiff demands:

- 40 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 41 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 42 of 69 PageID #:53

755    o **Restitution** of any improperly obtained assets or benefits;

756    o **Compensatory damages** for all harms caused;

757    o **Punitive damages** for the intentional nature of the misconduct;

758    o **Equitable relief** restoring rightful assets control and preventing further abuse.

759    103.    In totality, Defendants' misconduct reflects a systematic betrayal of trust, abuse

760    of insider knowledge, and weaponization of corporate authority — all in violation of

761    the fiduciary standards that define lawful conduct under both state law and applicable

762    case precedent. The law is clear: fiduciaries must serve the Company, not sabotage it

763    for tax losses or personal vendettas.

764    **COUNT V – DEFAMATION & MARKET MANIPULATION**
765    (Against All Defendants)

766    104.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this

767    Complaint as though fully set forth herein.

768    105.    Defendants engaged in a sustained, malicious campaign of **false statements**,

769    **character assassination**, and **manipulative trading activity** designed to damage

770    Plaintiff's personal and professional reputation, destabilize and destroy MAXD's stock

771    value, and facilitate an unlawful seizure of corporate control.

772    106.    The First Amendment does not shield knowingly false and malicious speech. In

773    *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Supreme Court held that

774    **falsehoods published with actual malice — knowledge of falsity or reckless**

775    **disregard for the truth — are actionable and fall outside constitutional**

- 41 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 42 of 69

776    **protection**. The volume and nature of Defendants' defamatory speech, including the

777    repetition of known lies, clearly meets this threshold.

778    107.    The **defamatory statements** made by Defendants were published to the public,

779    investors, partners, vendors, and regulators through:

780    o  Thousands of online message board posts on **Yahoo Finance and InvestorHub**

781       **(iHub)**;

782    o  **YouTube videos**, Twitter threads, and blog content orchestrated by **Alfred**

783       **Hildebrand a.k.a. Bill Nichols**, falsely labeling Plaintiff a con artist, thief, and

784       fraud;

785    o  **False legal claims** by Devine Mafa, who publicly declared he was a former

786       executive owed wage, despite never having held any legitimate employment

787       agreement with MAXD;

788    o  Repeated public statements by Harvey Vechery and associates misrepresenting

789       Plaintiff's legal standing, control of the company, mental stability, and financial

790       record — all while suppressing the fact that Vechery **sold his interest in F4P** and

791       had **no rightful standing** in MAXD's control structure.

792    108.    Defendants' **false and defamatory statements** included, but were not limited

793    to:

794    o  Accusations of embezzlement, fraud, and personal mental illness;

- 42 -

795       o   False claims that Plaintiff was evicted from his home, removed from MAXD, or

796           otherwise legally barred from leadership;

797       o   Assertions that Plaintiff falsified SEC filings or corporate reports — when in fact,

798           he maintained compliance for over a decade and voluntarily went non-reporting due

799           to harassment and digital attacks.

800    109.     These statements not only defame but do so in a calculated and destructive way.

801    In *United States v. Yung*, 37 F.4th 70 (3d Cir. 2022), the court ruled that **online**

802    **impersonation and the dissemination of knowingly false legal narratives, designed**

803    **to intimidate or deceive, constitute criminal misconduct and are not protected**

804    **expression** — particularly where the target is harassed, reputationally destroyed, and

805    publicly misrepresented.

806    110.     These statements were **intentionally false**, **published with actual malice**, and

807    **made with the intent to destroy public confidence** in both Plaintiff and the

808    Company.

809    111.     Simultaneously, Defendants and co-conspirators engaged in **coordinated**

810    **market manipulation**, including:

811       o   The publication of **over 60,000 manipulative or negative posts** tied to MAXD

812           across Yahoo and iHub, as documented by screenshot evidence;

813       o   Timing of these posts to coincide with company filings, investor milestones, or

814           public announcements — creating **manufactured panic and sell-offs**;

- 43 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 45 of 69 PageID #:56
Page 45 of 69

815      o   Encouraging retail investors to exit the stock while insiders secretly coordinated a

816          hostile control effort behind the scenes;

817      o   Use of **synthetic share creation via naked short selling**, flooding the market with

818          phantom shares and making it **mathematically impossible** for legitimate share price

819          discovery to occur.

820   112.      Coordinated digital defamation in connection with securities transactions

821   qualifies as market manipulation. The Supreme Court in *SEC v. Zandford*, 535 U.S.

822   813 (2002), made clear that **a course of deceptive conduct affecting investor**

823   **decisions or market pricing falls within the scope of Rule 10b-5 — even without a**

824   **single fraudulent trade**, so long as it is "in connection with" the purchase or sale of

825   securities.

826   113.      These acts constitute **defamation per se**, under Illinois common law, and

827   **manipulative trading practices** under the Securities Exchange Act of 1934, Rule

828   10b-5, and state securities laws.

829   114.      The damages from this dual campaign of defamation and manipulation include:

830      o   The collapse of MAXD's share price to **$0.000001**, with over **$120 million in**

831          **lost market cap**;

832      o   Complete loss of investor confidence and brand credibility;

833      o   The inability to raise capital, execute licensing deals, or move forward with

834          product launches;

- 44 -

835      ○    Deep personal and reputational harm to Plaintiff, including professional

836           blacklisting and targeted harassment.

837    115.     Plaintiff is entitled to:

838      ○    **Compensatory damages** for reputational loss, market value destruction, and

839           business interruption;

840      ○    **Punitive damages** based on the willful, sustained, and malicious nature of

841           Defendants' actions;

842      ○    **Equitable relief** including takedown orders, content preservation demands, and

843           public retractions;

844      ○    A full **jury trial**, to expose the coordinated character of the misinformation and

845           deliver accountability.

846    116.     Defendants' public lies and market manipulation, when viewed together, reflect

847    a deliberate campaign of economic sabotage and reputational warfare. The

848    combination of *Gertz*, *Yung*, and *Zandford* clearly confirms that **these acts are not**

849    **protected speech, but actionable torts and securities violations punishable under**

850    **both state and federal law**.

851    # COUNT VI – DECLARATORY RELIEF (Against All Defendants)

852    117.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this

853    Complaint as though fully set forth herein.

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

854   118.     A genuine, immediate, and justiciable controversy exists between Plaintiff and
855          Defendants concerning:

856          o   The **validity and enforceability of Plaintiff's controlling ownership** of
857              MAXD;
858          o   The **legal status of all preferred and common shares held by Plaintiff**;
859          o   The **lawful governance of MAXD**, including rightful officer and director
860              appointments;
861          o   The **fraudulent and void nature of recent court rulings, corporate actions,**
862              **and SEC-related filings** orchestrated by hostile actors acting in bad faith.

863   119.     Plaintiff is the **Super Majority Shareholder** of MAXD, holding **a controlling**
864          **position of preferred shares** acquired lawfully and documented in corporate records,
865          SEC filings, and shareholder resolutions going back as far as 2017. These shares
866          provide Plaintiff with:

867          o   Voting control under Delaware law;
868          o   The right to appoint officers and directors;
869          o   Final authority on significant corporate actions.

870   120.     Despite this, **Defendants have publicly and fraudulently disputed Plaintiff's**
871          **ownership** and corporate control by:

872          o   Filing false or misleading legal pleadings;

- 46 -

873      o   Circulating defamatory claims that Plaintiff was "removed" or "terminated" from

874          MAXD;

875      o   Attempting to override legitimate share structure via court manipulation, false

876          board appointments, and insider conspiracy;

877      o   Failing to honor the legal and financial separation of parties — specifically **Harvey**

878          **Vechery's full divestiture from Formula 4 Protocol and MAXD**, which was

879          executed and confirmed via promissory note and recorded conversation, then

880          fraudulently altered by Defendant.

881   121.     The manipulation of legal proceedings and distortion of governance structure

882      described herein rises to a **due process violation** under *Caperton v. A.T. Massey Coal*

883      *Co.*, 556 U.S. 868 (2009), where the Court held that **judicial outcomes influenced by**

884      **concealed or corrupt motives undermine constitutional fairness** and demand

885      reversal or nullification. When insider actors hijack judicial process to achieve what

886      they could not achieve through lawful governance, declaratory relief is not only

887      warranted — it is constitutionally required.

888   122.     These false claims have caused severe uncertainty within the public markets,

889      investor community, and business ecosystem. They obstruct Plaintiff's ability to

890      operate, represent, or grow the Company and sow confusion as to:

891      o   Who rightfully holds authority at MAXD;

892      o   Which shares are valid and enforceable;

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 47 of 67

893            o   Whether third parties can transact in reliance upon agreements signed by

894                Plaintiff.

895    123.        Moreover, this scenario presents an **equal protection violation** akin to *Yick Wo*

896        *v. Hopkins*, 118 U.S. 356 (1886), where unequal application of laws or administrative

897        power **to deny a lawful owner the benefits of his rights** constitutes unconstitutional

898        discrimination. Here, the Plaintiff was singled out for misinformation, denied equal

899        legal standing, and stripped of property rights through fraud and bad-faith procedure.

900    124.        Under **735 ILCS 5/2-701**, Plaintiff seeks **a judicial declaration of rights and**

901        **status**, specifically that:

902            o   Plaintiff Gregory J. Halpern is and at all relevant times was the **lawful CEO,**

903                **controlling shareholder, and authorized representative of MAXD**;

904            o   All shares of preferred and common stock issued to Plaintiff are **valid,**

905                **enforceable, and binding**;

906            o   The attempted takeover of MAXD by any Defendant, including through

907                **fraudulent court orders or stock manipulation**, is **null and void**;

908            o   Any statements, filings, or communications suggesting otherwise are **factually**

909                **and legally false** and must be publicly corrected.

910    125.        Illinois courts have broad equitable authority under **735 ILCS 5/2-701** to issue

911        declarations of legal rights where controversies exist regarding corporate control,

912        share validity, and executive status. Declaratory judgment is especially appropriate

- 48 -

913  where, as here, the confusion and falsity are harming not just the litigant, but the entire

914  shareholder base, investor market, and governance ecosystem.

915  126.     Declaratory judgment is necessary to:

916     o   End the uncertainty and controversy surrounding MAXD's control;

917     o   Restore proper governance and protect shareholder equity;

918     o   Provide fair notice to regulators, partners, exchanges, and investors;

919     o   Prevent further unlawful interference with Plaintiff's lawful role and property

920        rights.

921  127.     Plaintiff respectfully requests that the Court issue an Order:

922     o   Declaring Plaintiff's full legal rights and authority within MAXD;

923     o   Declaring void all adverse actions taken by any Defendants against Plaintiff's

924        role, shares, or public standing;

925     o   Directing Defendants to cease and desist all further interference,

926        misrepresentation, and disruption of MAXD governance.

927  128.     Without declaratory relief, Plaintiff will remain at ongoing risk of interference,

928  defamation, and unlawful dilution — in violation of both statutory equity and

929  constitutional protections of property, reputation, and lawful standing. Courts have

930  repeatedly emphasized that **restoration of status and prevention of continued harm**

931  **are central purposes of declaratory judgment statutes** such as §2-701 and

932  constitutional safeguards under *Caperton* and *Yick Wo.*

- 49 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 51 of 69 PageID #:62
Page 50 of 69

# COUNT VII – RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) – 18 U.S.C. §§ 1961–1964
(Against All Defendants)

129.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

130.    This cause of action is brought pursuant to the **Illinois RICO statute (720 ILCS 5/33G)** and is intended to be fully consistent with the structure and elements of the federal **Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968)**.

131.    Defendants formed an **association-in-fact enterprise** ("the Enterprise") composed of:

- o  Insider saboteurs (including **Harvey Vechery**, **Harold Blaisure**, **Michael Turner**, **Devine Mafa, Constance Nash**, and **Alfred Hildebrand a.k.a. Bill Nichols**);

- o  Financial market enablers (including but not limited to **Citadel Securities llc, Knight Securities**, **Virtu Financial**, **Cantor Fitzgerald**, **Canaccord Genuity, Charles Schwab & Co., E\*Trade Securities llc, JP Morgan Chase & Co., Goldman Sachs Group Inc., Merrill Lynch; UBS Asset Management, Inc., Credit Suisse Inc. and Deutsche Bank Securities**);

- o  Information warfare facilitators (**Yahoo**, **InvestorHub**, and social media platforms);

- 50 -

954          o   Unlicensed agents posing as legal professionals, corporate officers, and

955              shareholder advocates.

956    132.      The SEC, along with former commissioners Schapiro, White, and Clayton,

957              operated as **derelict regulatory gatekeepers** within the broader RICO enterprise.

958              Their deliberate refusal to investigate or prosecute obvious fraud, naked shorting, or

959              digital manipulation — despite direct complaints from Plaintiff — allowed the

960              enterprise to flourish and function. The SEC's internal obstruction of whistleblower

961              complaints, retaliation against independent auditors, and refusal to enforce Reg SHO

962              and Rule 10b-5 **constitute obstruction of justice and concealment of predicate acts**

963              under 18 U.S.C. § 1961(1), and enabled the RICO enterprise's continued attack on

964              Plaintiff and MAXD.

965    133.      RICO enterprises may consist of both legal entities and association-in-fact

966              organizations. As defined in *Boyle v. United States*, 556 U.S. 938 (2009), an

967              association-in-fact enterprise exists when a group of individuals functions as a

968              continuing unit with a common purpose — even if informal. The structure you've

969              described here — including insiders, digital facilitators, and financial institutions

970              acting in concert — **meets the Supreme Court's test for an enterprise under 18**

971              **U.S.C. § 1961(4).**

972    134.      The Defendants **knowingly and willfully conspired**, directly and indirectly, to

973              engage in a pattern of **racketeering activity** including but not limited to:

- 51 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 52 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 53 of 69 PageID #:64

| | | |
|---|---|---|
| 974 | o | **Securities fraud** (counterfeit share issuance, naked short selling, and false |
| 975 | | filings with the SEC); |
| 976 | o | **Wire fraud** (false narratives disseminated through digital platforms to |
| 977 | | manipulate public markets and investor sentiment); |
| 978 | o | **Defamation, extortion, and intimidation** (targeted at Plaintiff and supportive |
| 979 | | partners, with threats of legal destruction and personal ruin); |
| 980 | o | **Obstruction of justice** (by misleading courts with fabricated filings and |
| 981 | | concealing insider interests); |
| 982 | o | **Identity fraud and impersonation** (individuals falsely presenting themselves |
| 983 | | as company executives, attorneys, or whistleblowers); |
| 984 | o | **Tortious interference** (with MAXD's business contracts, partnerships, and |
| 985 | | capital formation channels). |

986   135.   The pattern of racketeering included **multiple related acts** within a 10-year

987   period, as required by law, including:

| | | |
|---|---|---|
| 988 | o | A fraudulent Schedule 13D delay and takeover strategy by Vechery; |
| 989 | o | Thousands of coordinated defamatory posts by Hildebrand and co-conspirators; |
| 990 | o | A forged employment and wage dispute by Mafa to fabricate standing; |
| 991 | o | Manipulated securities trading by Citadel and affiliated market makers to crush |
| 992 | | MAXD's value to $0.000001; |
| 993 | o | Fake derivative lawsuits and fraudulent YouTube legal commentary |
| 994 | | orchestrated by unlicensed aliases. |

- 52 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction-1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 54 of 69 PageID #:65
Page 55 of 69

136.     Under 18 U.S.C. § 1961(1), predicate acts include **securities fraud (under 15 U.S.C. § 78j), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. § 1503), and extortion (18 U.S.C. § 1951)**. The coordinated dissemination of false legal claims, market misinformation, impersonation of legal officers, and strategic obstruction of Plaintiff's governance rights clearly satisfy this threshold. As emphasized in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), **civil RICO liability does not require conviction — only proof by preponderance that a pattern of racketeering activity caused harm.**

137.     The **purpose and effect** of the RICO enterprise was to:

- o  Illegally depress MAXD's stock to allow insiders and market makers to **profit from short positions and regain control for fractional pennies**;

- o  Remove Plaintiff from corporate leadership to **steal intellectual property, cancel preferred shares**, and nullify lawful control;

- o  Damage Plaintiff's public reputation and access to capital through a premeditated digital smear campaign;

- o  **Frustrate SEC and investor oversight** by using anonymous aliases, burner entities, and platform TOS loopholes.

138.     These acts are **ongoing**, pose a **threat of continued criminal conduct**, and were conducted with **intent to defraud, extort, and misappropriate corporate control and equity value** from Plaintiff and shareholders. The Supreme Court has stressed that a **pattern of racketeering** requires continuity and relatedness. *H.J. Inc. v.*

- 53 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

1016    *Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), held that this element is met where

1017    the racketeering acts are not isolated, but rather form a **systematic campaign with**

1018    **open-ended potential for ongoing harm**. The multiyear coordination detailed here —

1019    with continuing defamation, asset concealment, and market manipulation — fulfills

1020    the continuity requirement and establishes enterprise intent beyond doubt.

1021    139.    As a direct and proximate result of this racketeering enterprise:

1022        o   Plaintiff has suffered the loss of control and effective ownership of MAXD;

1023        o   Over **$120 million in shareholder equity** has been obliterated;

1024        o   MAXD's brand and investor trust have been materially and unlawfully

1025            damaged;

1026        o   Plaintiff has incurred costs, legal expenses, emotional trauma, and reputational

1027            devastation.

1028    140.    Plaintiff demands the following relief pursuant to Illinois and federal RICO

1029        statutes:

1030        o   **Treble damages** for all economic losses sustained;

1031        o   **Equitable relief** to dissolve the influence and mechanisms of the enterprise,

1032            including declaratory orders and platform take-downs;

1033        o   **Asset forfeiture** of any profits or holdings obtained through racketeering acts;

1034        o   **Punitive damages** for the willful and systemic nature of the criminal

1035            enterprise;

- 54 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

1036        o  **Attorneys' fees and costs**, including future enforcement and whistleblower

1037           protections;

1038        o  Any other relief this Court deems just and proper under law.

1039    141.      Taken together, these facts meet every legal element required for RICO liability

1040    under both Illinois and federal law: a distinct enterprise, predicate acts, continuity,

1041    injury to property and business, and causation. Where civil RICO applies, the Court

1042    must order treble damages and consider equitable remedies under *Sedima* and *H.J. Inc.*

1043    to fully dismantle the criminal apparatus and restore lawful corporate order.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (Against All Defendants)

1044    142.      Plaintiff realleges and incorporates by reference all preceding paragraphs of this

1045    Complaint as though fully set forth herein.

1046    143.      Defendants, individually and in coordinated effort, engaged in **extreme,**

1047    **outrageous, and malicious conduct** intentionally calculated to inflict **emotional**

1048    **distress, public humiliation, reputational destruction, and personal isolation** upon

1049    Plaintiff.

1050    144.      The misconduct at issue exceeds all bounds of decency tolerated in a civilized

1051    society and includes:

1052        o  Public accusations of **mental instability**, **criminal fraud**, and **embezzlement**

1053           — all without basis or evidence;

- 55 -

       o   **Dozens of YouTube videos**, blog posts, and social media content **accusing Plaintiff of being a con artist, liar, and scammer**, posted by known aliases including Alfred Hildebrand a.k.a. Bill Nichols, Harold Blaisure, Michael Turner, Devine Mafa and Constance Nash;

       o   The repeated use of **anonymous accounts on Yahoo Finance and iHub** to **mock, threaten, and belittle Plaintiff**, including false claims of eviction, insanity, and corporate theft — over **60,000 times**;

       o   **False wage claims and fake lawsuits** engineered to harass, delay, and inflict emotional pressure during moments of personal crisis and legal vulnerability;

       o   Misuse of court systems, including the procurement of a **fraudulent default judgment** in California based on manipulated claims of shareholder harm and altered filings;

       o   The ongoing disruption of Plaintiff's **ability to sleep, work, function socially, or engage with investors and colleagues without fear of defamation, sabotage, or surveillance.**

145.     Defendants' conduct was **deliberate**, **targeted**, and **ongoing** — driven by greed, retaliation, and a desire to erase Plaintiff from the corporate and public landscape using a playbook of digital violence, legal manipulation, and social annihilation.

146.     This was not a one-off attack. It was a **multi-year psychological campaign** marked by:

      o  Over **16,000 phone call attempts** by Defendant Harvey Vechery to harass and destabilize Plaintiff;

      o  Leaked and manipulated recordings;

      o  The triggering of PTSD from years of litigation abuse and professional sabotage;

      o  False narratives spread to Plaintiff's family, colleagues, and stakeholders.

147.     Plaintiff's emotional distress was further aggravated by the willful indifference and retaliatory posture of the SEC and its leadership. Despite detailed and credible complaints from Plaintiff, including recordings, data, and documentation, the SEC refused to intervene, protect investors, or stop the coordinated destruction of Plaintiff's company. This dereliction, compounded by prior enforcement against MAXD's auditor for non-existent infractions, **created a sense of helplessness, state-sanctioned betrayal, and psychological torment**, contributing directly to the lasting emotional damage described herein.

148.     Plaintiff suffered, and continues to suffer, **severe emotional distress**, including:

      o  Anxiety, depression, and trauma;

      o  Insomnia, physical exhaustion, and paranoia;

      o  Reputational ostracization in both professional and personal communities;

      o  Long-term damage to his ability to work, earn income, and maintain health.

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

1095    149.    Under Illinois law, a claim for Intentional Infliction of Emotional Distress

1096        requires:

1097        o   **Extreme and outrageous conduct**;

1098        o   Intent to cause, or reckless disregard of the probability of causing, emotional

1099            distress;

1100        o   **Actual severe emotional distress** suffered by the plaintiff.

1101    150.    Illinois courts have long held that IIED requires conduct "so extreme as to go

1102        beyond all possible bounds of decency." (*Public Finance Corp. v. Davis*, 66 Ill.2d 85

1103        (1976)). The conduct need not be physical — reputational destruction, coordinated

1104        humiliation, and digital threats that result in anguish and trauma **can constitute IIED**

1105        when designed to break a plaintiff mentally and emotionally.

1106    151.    Defendants' conduct satisfies each element of this test. The lies, manipulation,

1107        harassment, impersonations, and relentless campaign against Plaintiff were:

1108        o   **Deliberate and sadistic**;

1109        o   Without legal justification;

1110        o   Intended to **cause lasting harm** emotionally, mentally, reputationally, and

1111            professionally.

1112    152.    This campaign mirrors what the U.S. Supreme Court warned against in

1113        *Goldberg v. Kelly*, 397 U.S. 254 (1970), which recognized that reputational

1114        destruction and loss of standing, especially without due process, **violates fundamental**

- 58 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 59 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 60 of 69 PageID #:71

1115       **liberty interests**. Emotional distress inflicted under the color of judicial manipulation

1116       and targeted harassment raises serious constitutional concerns.

1117    153.     Plaintiff is entitled to recover:

1118         o  **General damages** for mental suffering and reputational trauma;

1119         o  **Special damages** for financial losses tied directly to the campaign of

1120           harassment;

1121         o  **Punitive damages** to punish Defendants' malicious conduct and deter similar

1122           schemes from being perpetrated on others;

1123         o  **Costs of suit and such other relief as this Court deems just and proper.**

1124    154.     Defendants' coordinated efforts — including death threats, impersonation,

1125    surveillance, and reputational mutilation — are not only outrageous under Illinois law,

1126    but **raise red flags under federal constitutional standards of personal security, due**

1127    **process, and equal protection**. Where emotional destruction is a goal, not a

1128    byproduct, liability is not just civil — it's structural.

## IX. CLAIMS FOR RELIEF

1129    Plaintiff seeks relief under the following legal claims, each supported by controlling statutory

1130    and judicial authority:

- 59 -

1131    1. **Fraud** — for Defendants' intentional misrepresentations, omissions, and concealment

1132      of material facts, causing catastrophic financial and reputational damage.

1133      *Supported by:*

1134        o   *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) – defining materiality and reliance

1135          in securities fraud.

1136        o   *SEC v. Zandford*, 535 U.S. 813 (2002) – establishing liability for fraudulent

1137          schemes connected to securities.

1138    2. **Securities Fraud** — for violations of federal and Illinois securities laws through

1139      manipulation of filings, failure to disclose insider ownership, false statements, and

1140      naked short selling schemes.

1141      *Statutory Basis:*

1142        o   Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5

1143        o   815 ILCS 5/12 (Illinois Securities Law)

1144        *Case Law:*

1145        o   *SEC v. Zandford*, 535 U.S. 813 (2002)

1146        o   *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)

1147        o   Reg SHO violations (17 C.F.R. § 242.200)

1148    3. **Civil Conspiracy** — for Defendants' collective coordination of market manipulation,

1149      defamation, and corporate sabotage to seize control and profit unlawfully.

1150      *Supported by:*

- 60 -

1151      o *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102 (1999) – Illinois
1152          civil conspiracy standard.

1153      o *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) – conspiracy resulting
1154          in judicial process manipulation.

1155      o *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) – unequal legal enforcement as
1156          constitutional violation.

1157     4. **Breach of Fiduciary Duty** — for insiders and former officers who betrayed their
1158     obligations to MAXD and its shareholders through deception, concealment, and
1159     malicious interference.
1160     *Supported by:*

1161      o *Steinmetz v. Kern*, 375 Ill. App. 3d 612 (1st Dist. 2007) – fiduciary standards in
1162          Illinois.

1163      o *Patrick v. City of Chicago*, 2011 IL App (1st) 101388 – aiding and abetting
1164          breach of fiduciary duty.

1165     5. **Defamation & Market Manipulation** — for the public dissemination of knowingly
1166     false claims, false impersonations, and trading practices intended to destroy Plaintiff's
1167     reputation and MAXD's value.
1168     *Supported by:*

1169      o *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) – no First Amendment
1170          protection for defamatory falsehoods.

- 61 -

1171      ○   *United States v. Yung*, 37 F.4th 70 (3d Cir. 2022) – impersonation and online

1172        deception as criminal conduct.

1173      ○   *SEC v. Zandford*, 535 U.S. 813 (2002) – market-based deception as a securities

1174        violation.

1175    6. **Declaratory Relief** — to legally affirm Plaintiff's control, invalidate fraudulent

1176    filings, and confirm the true corporate structure and governance of MAXD.

1177    *Statutory Basis:*

1178      ○   735 ILCS 5/2-701 (Declaratory Judgment Act)

1179        *Case Law:*

1180      ○   *Caperton v. A.T. Massey Coal Co.* – invalidation of compromised legal

1181        outcomes.

1182      ○   *Yick Wo v. Hopkins* – right to fair and equal application of legal process.

1183    7. **RICO Violations** — for the formation and execution of a criminal enterprise spanning

1184    securities fraud, wire fraud, intimidation, and obstruction — all designed to defraud

1185    Plaintiff and shareholders of millions.

1186    *Statutory Basis:*

1187      ○   18 U.S.C. §§ 1961–1964 (federal RICO)

1188      ○   720 ILCS 5/33G (Illinois RICO)

1189        *Case Law:*

1190      ○   *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) – civil RICO standard.

- 62 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793
Page 63 of 69

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 64 of 69 PageID #:75

1191      o *Boyle v. United States*, 556 U.S. 938 (2009) – RICO enterprise structure.

1192      o *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) – continuity of

1193        racketeering activity.

1194    8. **Intentional Infliction of Emotional Distress (IIED)** — for the long-term

1195    psychological trauma, public shaming, reputational ruin, and personal harm caused by

1196    the coordinated attacks of the Defendants.

1197    *Supported by:*

1198      o *Public Finance Corp. v. Davis*, 66 Ill. 2d 85 (1976) – IIED elements in Illinois.

1199      o *Goldberg v. Kelly*, 397 U.S. 254 (1970) – reputational and personal liberty

1200        interests under due process.

1201   **X. PRAYER FOR RELIEF**

1202 WHEREFORE, Plaintiff Gregory J. Halpern respectfully requests that this Court grant the

1203 following relief:

1204    1. **Compensatory damages** in excess of **$120,000,000**, representing economic losses,

1205    diminished share value, lost opportunities, and reputational harm.

1206    *Authorized under:*

1207      o Illinois common law tort recovery

1208      o Federal securities law (Section 10(b) and Rule 10b-5)

1209      o Civil RICO provisions (*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985))

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 63 of 67

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 65 of 69 PageID #:76
Page 85 of 89

1210      2. **Punitive damages** in an amount sufficient to punish and deter Defendants from
1211      engaging in similar conduct.

1212      *Supported by:*

1213          o   Illinois punitive damages doctrine where malice, fraud, or willful misconduct is
1214            proven (*Public Finance Corp. v. Davis*, 66 Ill. 2d 85 (1976))

1215      3. **Treble damages** under applicable **RICO statutes and securities laws** for willful and
1216      malicious racketeering activity.

1217      *Statutory authority:*

1218          o   18 U.S.C. § 1964(c)
1219          o   720 ILCS 5/33G-6
1220          o   *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229 (1989) – pattern of racketeering

1221      4. **Declaratory relief** confirming Plaintiff's ownership, control rights, and invalidating
1222      any and all unauthorized corporate actions, filings, or judgments obtained through
1223      fraud or collusion.

1224      *Supported by:*

1225          o   735 ILCS 5/2-701 (Declaratory Judgment Act)
1226          o   *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) – reversal of
1227            compromised legal outcomes

1228      5. **Equitable relief**, including:

- 64 -

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 66 of 69 PageID #:77
Page 65 of 69

    ○ **Removal or nullification** of fraudulent court rulings and SEC filings;

    ○ **Orders compelling retractions or takedowns** of defamatory content;

    ○ **Injunctions** against ongoing harassment, manipulation, or interference.

    *Authorized under:*

    ○ Illinois equitable authority and Rule 65 (injunction standard)

    ○ *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) – right to non-discriminatory legal access

6. **Restitution** of all profits, shares, or benefits obtained through unlawful acts by any Defendant.

    *Authorized under:*

    ○ Illinois restitution and unjust enrichment doctrines

    ○ Civil RICO forfeiture and disgorgement provisions (18 U.S.C. § 1964)

7. **Attorneys' fees, expert costs, court costs**, and all litigation expenses as permitted under law.

    *Authorized by:*

    ○ 18 U.S.C. § 1964(c) (RICO)

    ○ Illinois Consumer Fraud and Deceptive Business Practices Act

    ○ Rule 54(d) and Illinois Supreme Court Rule 219

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 65 of 67

1247      8. **Any other relief** the Court deems just, proper, and necessary to restore justice,

1248      shareholder rights, and public trust in the markets.

1249      *Consistent with:*

1250      ○  The Court's inherent equitable powers

1251      ○  Illinois and federal standards for full remedial relief

1252  **XI. DEMAND FOR JURY TRIAL**

This demand is made pursuant to **Article I, Section 13 of the Illinois Constitution**, and the

**Seventh Amendment to the United States Constitution**, which entitles litigants to jury

adjudication in all matters involving legal damages, tort claims, fraud, or constitutional

violations. The factual complexity, volume of reputational harm, and public interest in

restoring lawful market conduct all demand full transparency through a trial by jury.

**Respectfully submitted,**

 DATED at Spring Grove, Illinois, this 1ˢᵗ day of May 2025.

GREGORY J HALPERN, PRO SE
11008 MORNING DOVE LANE
SPRING GROVE, ILLINOIS 60081
EMAIL: greghalpern1@proton.me
PHONE: (847)565-9732
FAX: (815)604-8075

## XII. EXHIBITS

1253

1254 • Plaintiff hereby incorporates the following exhibits in support of the allegations and
1255 claims stated herein:

1256 • **Exhibit A – Whistleblower Complaint to the SEC (April 22, 2022)** Filed via the
1257 SEC's Tip, Complaint, and Referral (TCR) system, this submission includes audio
1258 recordings, emails, screenshots, and evidence of coordinated fraud, defamation, and
1259 illegal trading behavior by insiders and external actors.

1260 • **Exhibit B – FOIA-Sourced FOCUS Reports** Documents obtained through Freedom
1261 of Information Act requests showing broker-dealer undercapitalization, unresolved
1262 fails-to-deliver, net capital violations, and SEC awareness of manipulation practices,
1263 particularly relating to MAXD.

1264 • **Exhibit C – MAXD Form 8-K (November 21, 2022)** Public disclosure filed with the
1265 SEC detailing the campaign of racketeering, insider sabotage, false lawsuits,
1266 cyberstalking, and market manipulation targeting MAXD and its leadership.

1267 • **Exhibit D – MAXD Short Volume & Manipulation Report (June 13, 2018)** Press
1268 release and accompanying data proving that over 8.1 billion MAXD shares were
1269 illegally shorted in a single year—exceeding 40% of all trading volume—by Citadel,
1270 Virtu, Knight, and others.

1271 • **Exhibit E – Trump Media Short Attack Documentation (2024)** Report of short
1272 selling attack against Trump Media & Technology Group, filed by Devin Nunes and
1273 referenced in congressional inquiry, illustrating a parallel campaign of digital
1274 counterfeiting, manipulation, and SEC inaction.

1275 • These exhibits provide indisputable evidence of fraud, coordinated manipulation,
1276 regulatory negligence, and the broader RICO enterprise alleged in this Complaint.

Received 05-02-2025 08:16 AM / Circuit Clerk Accepted on 05-02-2025 03:03 PM / Transaction #32527973 / Case #2025MR000097
Page 67 of 67

CERTIFIED COPY - McHenry County Circuit Clerk - COMPLAINT - 06/10/2025 - 12:21:33 PM - 2025MR000097 - Transaction 1024793

Case: 3:25-cv-50269 Document #: 1-1 Filed: 06/20/25 Page 69 of 69 PageID #:80
Page 69 of 69

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE 22nd JUDICIAL CIRCUIT

McHENRY COUNTY

HALPERN, GREGORY J

vs.

CITADEL SECURITIES LLC, ET          Case Number    2025MR000097

Document Date:      5/1/2025
Document Type:      COMPLAINT
Number of Pages:    68

## CERTIFICATION

I, Katherine M. Keefe, Clerk of the 22nd Judicial Circuit Court, McHenry County, Illinois, do hereby certify the attached correct copy as it appears from the records and files in my office.

IN WITNESS WHEREOF, I have hereunto set my hand and caused to be affixed the Seal of the said Court.

DATE _____ June 10, 2025 _____

*Katherine M. Keefe*

KATHERINE M. KEEFE
Clerk of the Circuit Court
22nd Judicial Circuit
McHenry County, Illinois